IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CARL P. SELMEK, JR. and AMY SELMEK, his wife, )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>STATE FARM FIRE AND CASUALTY )<br>COMPANY, a wholly owned subsidiary of )<br>STATE FARM MUTUAL AUTOMOBILE )<br>INSURANCE COMPANY, )<br>)<br>Defendants. ) | Civil Action No. 14-388<br>Judge Nora Barry Fischer |

## MEMORANDUM ORDER

### I.  Background

  *a.  Review of Pertinent Facts Gleaned from the Amended Complaint*[1]

Plaintiffs, Carl and Amy Selmek, reside in a home in Sarver, PA. (Docket No. 19 at ¶1). Defendant, State Farm Fire and Casualty Co., is organized under the laws of the State of Illinois, and has its principal place of business in Bloomington, IL. (*Id.* at ¶2). This is a personal injury case, wherein Plaintiffs seek compensation for: injuries Mr. Selmek sustained when falling through the roof of his garage, (*Id.* at ¶20); loss of consortium damages stemming from said injuries, (*Id.* at ¶36); and the alleged bad faith of Defendant, (*Id.* at ¶42).

At the relevant time, the Selmeks' property contained "a dwelling and a detached garage approximately one hundred (100) yards from the house in a rural area." (*Id.* at ¶5). The premises were covered by a homeowner's dwelling and liability insurance policy, issued by Defendant, State Farm, with Mr. Selmek as the named insured. (*Id.* at ¶4; *Id.* at Ex. A).

---

[1] *See* Discussion, *infra*, at Part IV, pp. 7–8.

1

At some time prior to the events complained of, a windstorm damaged the roof of the garage, causing certain portions of the shingles of the roof to be blown off. (*Id.* at ¶8). Plaintiffs reported this as a covered loss to Defendant. (*Id.*). On or about September 27, 2013, Defendant dispatched a claims adjuster, Melissa Rosendale, to Plaintiffs' property "in order to inspect the premises and determine the potential loss under the policy." (*Id.* at ¶¶10–11). Upon her arrival at the Selmeks' property, Ms. Rosendale did not have sufficient equipment to go onto the garage's roof. (*Id.* at ¶11). Mr. Selmek "offered his own ladder to assist Ms. Rosendale . . . to gain access to the rooftop." (*Id.*). Ms. Rosendale then "had Mr. Selmek assist in taking measurements of the roof." (*Id.* at ¶12). After inspecting the exterior of the garage's roof, Ms. Rosendale "inspected the underside of the roof with . . . Mr. Selmek, from inside the building." (*Id.*).

After the loss inspection, Mr. Selmek "inquired of . . . Ms. Rosendale, whether or not he should secure the roof with a tarpaulin to prevent further leakage into the structure of the garage." (*Id.* at ¶13). "In response to this inquiry, Ms. Rosendale, while acting on behalf of the Defendant, instructed Mr. Selmek that he should go onto the roof to prevent further leakage and damage into the structure by securing a tarpaulin on the roof over the damaged area." (*Id.* at ¶14). In so doing, Plaintiffs allege, "Ms. Rosendale engaged Mr. Selmek in the claims process of inspecting the premises and carrying out her instructions to place a tarpaulin on the roof as a State Farm adjuster and had a duty to act in a safe and reasonable manner in directing the activity of Mr. Selmek." (*Id.* at ¶15). By "sending Mr. Selmek back up onto the roof," Ms. Rosendale "negligently exposed [Mr. Selmek] to a known danger of injury due to the deteriorated condition of the roof, thereby violating a duty to [Mr. Selmek] not to expose him to a known, foreseeable risk of injury and increasing the risk of harm to Mr. Selmek." (*Id.* at ¶16).

On September 28, 2013, the day after Ms. Rosendale's loss inspection, Mr. Selmek "went

onto the roof for the purposes of placing a tarpaulin on the roof to prevent further damage and leakage into the structure as instructed by Ms. Rosendale." (*Id.* at ¶17). While placing the tarp on the roof, Mr. Selmek "fell through the rotted wood of the roof into the structure below onto a landing, . . . render[ing] him a paraplegic." (*Id.* at ¶20). Plaintiffs allege that Defendant:

> chose to send [Mr. Selmek] up onto a roof over twenty (20) feet in the air, knowing it was exposing him to a dangerous activity rather than hiring a professional contractor with adequate safety equipment to perform the task when their adjuster had clearly seen that [Mr. Selmek] had no safety equipment for climbing on and walking on a damaged and rotted roof."

(*Id.* at ¶21).

    b. *Review of Pertinent Portions of the Insurance Policy Attached to the Amended Complaint and Incorporated Therein*

The insurance policy at issue in this case provides coverage to Mr. Selmek at his Harvey Road address in Sarver, Pennsylvania. (Docket No. 19-1 at p. 1). It was effective from January 18, 2013 through January 18, 2014. (*Id.*). The policy provides various coverages, including dwelling, personal property, personal liability, medical payments to other persons, and other coverages. (*Id.*).

Several portions of the policy are especially pertinent to this case. Initially, the policy provides that State Farm does not:

>  a. make safety inspections;
>  b. undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public;
>  c. warrant that conditions are safe or healthful; or
>  d. warrant that conditions comply with laws, regulations, codes or standards.
>
> This condition applies not only to [State Farm] but also to any rating, advisory, rate services or similar organization which makes insurance inspections, surveys, reports or recommendations on our behalf.

(*Id.* at p. 15 ¶12).

The policy further provides that, after a loss, the insured shall "protect the property from further damage or loss, make reasonable and necessary temporary repairs required to protect the property, [and] keep an accurate record of repair expenditures." (*Id.* at p. 30 ¶2(b)). It explicitly provides that State Farm "do[es] not insure under any coverage for any loss which would not have occurred in the absence of . . . [n]eglect, meaning neglect of the insured to use all reasonable means to save and preserve property at and after the time of a loss, or when property is endangered." (*Id.* at p. 27 ¶2(d) (emphasis omitted)). However, the policy contains an additional coverage providing "[i]f damage is caused by a Loss Insured, [State Farm] will pay the reasonable and necessary cost you incur for temporary repairs to covered property to protect the property from further immediate damage or loss." (*Id.* at p. 22 ¶2).

## II. Procedural History

Plaintiffs initially filed their case on March 24, 2014. (Docket No. 1). Defendant filed a motion to dismiss on May 21, 2014. (Docket No. 9). Plaintiffs thereafter filed an amended complaint on August 5, 2014. (Docket No. 19). Defendant again filed a motion to dismiss. (Docket No. 21). Plaintiffs filed a brief in opposition on September 16, 2014. (Docket No. 23). Defendant filed a reply brief on September 29, 2014. (Docket No. 24). On October 10, 2014, the Court ordered supplemental briefing regarding the applicability of 40 P.S. §§ 1842, 1843. (Docket No. 25). Said supplemental briefing was filed on October 9 and 10, 2014. (Docket Nos. 26, 27). The Court ordered a hearing on the instant motion be held on October 22, 2014. (Docket No. 29). Said hearing having been held, the Defendant's motion is now ripe.

## III. Legal Claims

Plaintiffs' Amended Complaint contains three Counts. (Docket No. 19). Count One seeks damages in negligence for the physical, emotional, and economic damages resulting from Mr.

Selmek's injury. (*Id.* at ¶¶26–32). Plaintiffs specifically allege:

> All of the resultant losses, damages and injuries sustained by the Plaintiff were a direct and proximate result of the reckless, careless and negligent conduct of the Defendant, State Farm, which was acting by and through its duly authorized agents, servants or employees who were acting within the course of their employment and within the scope of their authority in the following particulars:
>
> > a) In delegating a hazardous duty to the named insured when the Defendant's adjuster knew from her own inspection that the rooftop was hazardous and was a damaged roof; and/or
> >
> > b) In sending the named insured up onto the roof when the Defendant's adjuster knew that the named insured, Mr. Selmek, did not have adequate safety equipment to go onto the roof to prevent him from falling; and/or
> >
> > c) In failing to secure the premises herself or through a contractor paid by State Farm who had adequate safety and hazard protection equipment; and/or
> >
> > d) In placing the named insured in a position of peril when the adjuster herself had been on the roof and had observed the deterioration of the roof; and/or
> >
> > e) In delegating a duty to the insured of securing the premises when the adjuster knew that the insured had no safety equipment and inadequate safety protection; and/or
> >
> > f) In negligently undertaking to render services to Mr. Selmek and in sending him back up onto the roof which the Defendant knew or certainly should have known, as a trained professional property and casualty adjuster, was hazardous, thereby exposing Mr. Selmek to a severe risk of harm in violation of Section 323 of the Restatement (Second) of Torts; and/or
> >
> > g) In failing to warn Mr. Selmek of the deteriorated roof when the inspection of the roof revealed it was seriously damaged and needed to be repaired; and/or
> >
> > h) In increasing the risk of harm to Mr. Selmek by sending him back up on to a roof which was rotted and needed replacement when Defendant knew or should have known he could be injured; and/or

5

i) In failing to have adequate rules and regulations or guidelines which were adequately promulgated and enforced to prevent employees of the Defendant from exposing named insureds to known risk of hazard; and/or

j) In failing to promulgate adequate guidelines, rules and regulations for when an adjuster or an insured are prohibited from or strongly advised against going into a dangerous area where the Defendant's employees or insureds can be seriously injured while attempting to protect property and things; and/or

k) In failing to adequately instruct their property adjusters in safety so that a property adjuster would have a safety plan whenever they were going into a hazardous area which required the adjuster to first determine the risk involved before exposing herself or the insured to a known danger; and/or

I) In failing to adequately instruct and supervise its property adjusters so that they would be adequately trained to stay away from and off of dangerous premises such as roofs themselves and to keep the insured away from said conditions which could cause serious injury from a fall; and/or

m) In being aware of the fact that the named insured, Mr. Selmek, did not have adequate safety harnesses, a bucket truck or hi-lift or even a second person to help him in the event of difficulty while attempting to place a tarpaulin and protection on the roof when the adjuster exposed him to a known danger which led to his injury; and/or

n) In exposing the insured to a dangerous hazard of walking on a deteriorated roof when a contractor with adequate safety equipment could easily have been employed by State Farm to secure the premises and when said contractors were known and available to the insurance carrier as they regularly did work with such contractors in similar situations; and/or

o) In undertaking to render services to the insured, Carl P. Selmek, Jr., and in failing to exercise sufficient care to keep him off of the roof when they knew he had no safety equipment to go back up there, thereby increasing his risk of harm in violation of §42(a) of the Restatement (Third) of Torts; and/or

p) In failing to do a hazard assessment of the roof of Mr.

> Selmek when the adjuster was on it to determine it was unsafe to walk on or attempt to do any work on the roof, such as placing a tarpaulin on it without adequate safety equipment, thereby exposing the Plaintiff to a known hazard or risk; and/or
>
> q) In placing the man Plaintiffs life in jeopardy to protect property damage which was a covered loss under the policy when the insurance adjuster was in a superior position of knowledge of the hazard from her claims experience and training, which training was not known or available to the insured.

(*Id.* at ¶24).

Count Two seeks damages for Mrs. Selmek's loss of consortium. (*Id.* at ¶¶34–36). Count Three seeks damages stemming from the alleged bad faith of the Defendant. (*Id.* at ¶¶38–42). Specifically, Plaintiffs argue "that the Defendant acted in bad faith toward the insured by placing the insured at risk of severe personal injury from a known hazard after inspecting the roof in order to reduce the property damage to the roof, which was a covered loss under the policy even though it placed the insured's life and health in extreme jeopardy." (*Id.* at ¶39). Plaintiffs allege that this constitutes bad faith because "the insurer placed its own interests in adjusting the claim ahead of the interest of its insured by placing the insured in jeopardy of physical injury in order to save money on an insurance claim." (*Id.* at ¶41).

**IV. Legal Standard**

Defendant contends, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, that Plaintiffs' Complaint fails to state a claim upon which relief may be granted. (Docket No. 21). When considering a motion made under Rule 12(b)(6), the Court "accept[s] as true all allegations in the plaintiff's complaint as well as all reasonable inferences that can be drawn from them, and we construe them in a light most favorable to the non-movant." *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008). To survive dismissal pursuant to Federal Rule of Procedure 12(b)(6), "a complaint must

contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). While Rule 8 of the Federal Rules of Civil Procedure "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555). "Generally speaking, a trial court has discretion to address evidence outside the complaint when ruling on a motion to dismiss." *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 559 (3d Cir. 2002) (citing *Kulwicki v. Dawson*, 969 F.2d 1545, 1462 (3d Cir. 1992)). Specifically, "the court may consider documents which are attached to or submitted with the complaint . . . ." (*Id.* (quoting 62 Fed. Proc., L.Ed. § 62:506 (emphasis omitted)).

The law of the Commonwealth of Pennsylvania controls this action, as it is the forum with the greatest interest in the action. *See, e.g.*, *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 227 (3d Cir. 2007); *Cipolla v. Shaposka*, 267 A.2d 854, 856 (Pa. 1970). Accordingly, Pennsylvania common law controls the negligence and loss of consortium claims, and 42 PA. CONS. STAT. § 8371 controls the bad faith claim.

**V.     Discussion**

    *a.     Negligence Claim*

To state a claim for negligence, Plaintiffs must allege the existence of a duty, breach of that duty, causation, and damages. *See, e.g.*, *Phillips v. Cricket Lighters*, 841 A.2d 1000, 1008 (Pa. 2003). Defendant contends that it owed Mr. Selmek no duty in this case. (Docket No. 21 at p. 1 ¶1). Plaintiff contends that it has plead sufficient facts to establish a duty under either RESTATEMENT

(SECOND) OF TORTS § 323[2] and/or *Althaus v. Cohen*, 756 A.2d 1166 (Pa. 2000), to plausibly state a claim upon which relief can be granted. (Docket No. 23 at p. 1). In *Scampone v. Highland Park Care Center*, 57 A.3d 582, the Pennsylvania Supreme Court stated that "the principle articulated in Section 323 of the Restatement offered the functional equivalent of an *Althaus* factor analysis." 58 A.3d at 606.

The Court notes that Plaintiffs' Amended Complaint contains the following factual averments:

- Ms. Rosendale "engaged Mr. Selmek to go up onto the roof and assist in performing the inspection of the rooftop." (Docket No. 19 at ¶12).

- Ms. Rosendale "inspected the underside of the roof . . . form inside the building." (*Id.*).

- "Following the inspection of the roof . . ., [Mr. Selmek] inquired of . . . Ms. Rosendale whether or not he should secure the roof with a tarpaulin to prevent further leakage into the structure of the garage." (*Id.* at ¶13).

- "In response to this inquiry, Ms. Rosendale . . . instructed Mr. Selmek that he should go onto the roof to prevent further leakage and damage into the structure by securing a tarpaulin on the roof over the damaged area." (*Id.* at ¶14).

- "In sending Mr. Selmek back up onto the roof to place a tarpaulin on it, [Ms. Rosendale] negligently exposed the insured to a known danger of injury due to the

---

[2] Section 323 of the Restatement (Second) of Torts, entitled "Negligent Performance of Undertaking to Render Services," states:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if (a) his failure to exercise

9

deteriorated condition of the roof, thereby violating a duty to the named insured not to expose him to a known, foreseeable risk of injury and increasing the risk of harm to Mr. Selmek." (*Id.* at ¶16).

- "[I]n reliance on the expertise of the State Farm adjuster that she was competent in her job as damage inspector and that she would not endanger him, [Mr. Selmek] went onto the roof for purposes of placing a tarpaulin on the roof to prevent further damage by leakage into the structure as instructed by Ms. Rosendale the previous day." (*Id.* at ¶17).

The Court has previously outlined the pertinent portions of the insurance policy as they may pertain to Plaintiffs' claims. On review of same, the Court notes that State Farm does not seem to have a contractual duty to mitigate or prevent future damage. (*See* Docket No. 19-1 at p.22). Rather, that burden and the associated risk of loss appear to fall on the insured. (*See* Docket No. 19-1 at p. 27). However, "'normal' contract principles do not apply to insurance transactions." *Drelles v. Mfrs. Life Ins. Co.*, 881 A.2d 822, 836 (Pa. Super. Ct. 2005) (citing *Pressley v. Travelers Prop. Cas. Corp.*, 817 A.2d 1131, 1139 (Pa. Super. Ct. 2003)).

"The Pennsylvania Supreme Court has long held that an insurer must act within the 'utmost good faith' toward its insured." *Romano v. Nationwide Mut. Fire Uns. Co.*, 646 A.2d 1228, 1231 (Pa. Super. Ct. 1994) (citing *Fedas v. Ins. Co. of Pa.*, 151 A. 285, 286 (Pa. 1930)). "The insurer's duty of good faith . . . is contractual and arises because the insurance company assumes a fiduciary status by virtue of the policy's provisions which give the insurer the right to handle claims and control settlement." *Id.* (citing *Gray v. Nationwide Mut. Ins. Co.*, 223 A.2d 8 (Pa. 1966)). Further, as discussed *infra*, the insurer and its agents have a duty to disclose the extent of the coverage of a policy.

---

such care increases the risk of such harm, or (b) the harm is suffered because of the

Despite the language in the insurance policy, at this stage, the Court cannot say that Plaintiffs have not set forth a plausible claim under § 323. Accordingly, this case should proceed through discovery.

b. *Loss of Consortium Claim*

Mrs. Selmek's loss of consortium claim is derivative from Mr. Selmek's negligence claim. *See, e.g.*, *Scattaregia v. Shin Shen Wu*, 495 A.2d 552, 553 (Pa. Super. Ct. 1985). For the same reasons as stated above regarding Mr. Selmek's negligence claim, Defendant's Motion to Dismiss is denied.

c. *Bad Faith Claim*

Defendant contends that Plaintiffs' bad faith claim under 42 Pa. C.S. § 8371 should be dismissed because it does not allege any bad faith conduct. (Docket No. 21 at p. 19). Defendant relies on multiple Pennsylvania cases, suggesting that the application of § 8371 is limited to situations where the insurer unreasonably denied benefits due under an insurance contract. (*Id.* (citing *Berg v. Nationwide Mut. Ins. Co.*, 44 A.3d 1164, 1171 (Pa. Super. Ct. 2012). Plaintiffs admit that their bad faith claim is "factually unusual," but argue that the Amended Complaint "sets forth a sufficient number of facts to make out a cause of action for breach of the insurers' duty of good faith and fair dealing under the policy." (Docket No. 23 at p. 2). They maintain bad faith exists in this case in Ms. Rosendale's "exposing [Mr. Selmek] to a known hazard of being injured and falling through his roof in order to save money and reduce the claim of property damage payable by the insurer." (*Id.* at ¶40).

Plaintiffs rely on a series of cases concluding that the Pennsylvania bad faith statute "also extend[s] to the insurer's investigative practices." *Hollock v. Erie Ins. Exch.*, 842 A.2d 409, 415 (Pa.

---

other's reliance upon the undertaking.

Super. 2004) (en banc) (quoting *O'Donnell v. Allstate Ins. Co.*, 734 A.2d 901, 906 (Pa. Super. Ct. 1999). Defendant's main argument is that, pursuant to the insurance contract;

> the party being protected by the direction to tarp the roof was Mr. Selmek, not State Farm. Exclusion 2.d deprives Mr. Selmek of coverage for any harm occasioned after the windstorm by any neglect on his part "to use all reasonable means to save and preserve property at and after the time of the loss."

(Docket No.24 at pp. 5–6 (citing Docket No. 19-1 at p. 27)); *see also Romano*, 646 A.2d at 1231 (as discussed in Section V(a), *supra*). However, Plaintiffs' insurance policy also contains additional coverage for temporary repairs:

> If damage is caused by a Loss Insured, we will pay the reasonable and necessary cost you incur for temporary repairs to the covered property to protect the property from further immediate damage or loss.

(Docket No. 19-1 at p. 22). As such, it is conceivable that Defendant would have saved money on the claim by instructing Mr. Selmek to tarp the roof himself, rather than to hire a professional to do so, which seemingly would have been covered under the policy.

Additionally, the Court notes that:

> [u]nder Pennsylvania jurisprudence, insurers owe a duty of good faith and fair dealing to their insureds. Among other duties, the implied covenant creates an obligation to disclose fully the coverage and any requirements under the policy. The covenant arises from the nature of insurance contracts and the fiduciary relationship between an insurance company and its insureds.

*Burton v. Republic Ins. Co.*, 845 A.2d 889, 899 (Pa. Super. Ct. 2004) (internal citations omitted). Based on this authority, a plausible claim could arise under § 8371 where an insurer, in bad faith, declines to inform an insured as to coverage for temporary repairs.

The Court must "accept as true all allegations in the plaintiff's complaint as well as all reasonable inference that can be drawn from them . . . in a light most favorable to the non-movant." *Monroe*, 536 F.3d at 205. As the Amended Complaint alleges that Mr. Selmek climbed onto the roof

in reliance on Ms. Rosendale's instruction to do same, it is reasonable to infer that she did not inform him of his right to reimbursement to hire a professional to do the temporary repair instead. (Docket No. 19 at ¶17). Therefore, the Court holds that Plaintiffs' Amended Complaint pleads sufficient factual averments to support a potential bad faith claim under 42 Pa. C.S. § 8371 at this stage of the litigation.

**VI.     Conclusion**

AND NOW this 20th day of November, 2014, upon consideration of the foregoing,

IT IS HEREBY ORDERED that Defendant's Motion to Dismiss, (Docket No. [21]), is DENIED, without prejudice, to be reasserted after discovery in this case.

IT IS FURTHER ORDERED that the Defendant shall file its answer by **December 11, 2014**.

IT IS FINALLY ORDERED that a case management conference shall be set by an appropriate Court order once Defendant files its answer.

/s Nora Barry Fischer
Nora Barry Fischer
U.S. District Judge

cc/ecf: All counsel of record.